## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAY ZOLA and JEREMIAH JOSEPH LOWNEY, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 8:14-cv-288 |
| v. | ) ) | |
| TD AMERITRADE, INC., TD AMERITRADE CLEARING, INC., | ) ) ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1446, and 1453, Defendants TD Ameritrade, Inc. ("TD Ameritrade") and TD Ameritrade Clearing, Inc. ("TD Ameritrade Clearing," and with TD Ameritrade, "Defendants") hereby remove to this Court the above-styled state court action, which, at the time of this filing, was pending as Case No. D01CI140006766 in the District Court of Douglas County, Nebraska (the "Action"). Defendants remove this action pursuant to 15 U.S.C. §§ 77p and 78bb (the Securities Litigation Uniform Standards Act of 1998 ("SLUSA")) or, in the alternative, pursuant to 28 U.S.C. §§ 1332(d) and 1453 (the Class Action Fairness Act ("CAFA")). The grounds for removal are set forth in further detail below.

## BACKGROUND

1.       On the heels of the filing of federal securities class actions alleging misrepresentations and omissions regarding high frequency trading and order execution, as described in the book *Flash Boys: A Wall Street Revolt* ("*Flash Boys*"), the Plaintiffs filed the instant complaint. It asserts a state law breach of contract claim against Defendants based on the same book. While the complaint purports to allege a breach of contract claim, its allegations fall

squarely within SLUSA's removal (and dismissal) provisions.  In the unlikely event that the complaint were found not removable under SLUSA, the Complaint is removable under CAFA.[1]

2.      On or about March 31, 2014, *Flash Boys* was published.  *See* Michael Lewis, *The Wolf Hunters of Wall Street, An Adaption From 'Flash Boys: A Wall Street Revolt,'* N.Y. Times, Mar. 31, 2014, http://www.nytimes.com/2014/04/06/magazine/flash-boys-michael-lewis.html (last visited Sept. 21, 2014); *accord* Compl. at p. 1 & ¶¶ 25-26 (citing to *Flash Boys*).

3.      On or about April 18, 2014, the first of several federal securities class action complaints was filed in the U.S. District Court for the Southern District of New York, which asserted federal securities fraud claims against more than 40 institutions, including the parent of TD Ameritrade, and cited extensively to *Flash Boys*.  *See, e.g.*, Complaint, *City of Providence, Rhode Island v. BATS Global Markets, Inc., et al.*, No. 14-cv-2811 (S.D.N.Y. Apr. 18, 2014), ECF No. 2.[2]

4.      Months later, on or about August 21, 2014, plaintiffs Jay Zola and Jeremiah Joseph Lowney ("Plaintiffs") commenced this Action by filing a class action complaint (the "Complaint") in the District Court of Douglas County, Nebraska.

5.      Service of the Complaint was effected on August 25, 2014.

6.      The Complaint purports to assert a single state law breach of contract claim against TD Ameritrade, a securities retail broker-dealer, and TD Ameritrade Clearing, a corporation that provides securities trade execution and clearing services to TD Ameritrade.  (Compl. ¶¶ 2-3, 6-7.)  Plaintiffs allege that they are customers of Defendants and were each a

---

[1] Defendants' motion to dismiss the Complaint will be forthcoming.

[2] The New York securities lawsuits were subsequently consolidated, and the amended complaint that was filed on September 2, 2014 did not name TD Ameritrade as a defendant.  *See* Amended Complaint, *City of Providence*, No. 14-cv-2811 (S.D.N.Y. Sept. 2, 2014), ECF No. 226.  On information and belief, a class action complaint concerning these same issues was filed on September 15, 2014 in the U.S. District Court for the District of New Jersey, which named as defendants certain TD Ameritrade entities and its CEO, and asserted claims for violations of certain federal securities laws and for breach of fiduciary duty.

2

party to a certain client agreement ("Client Agreement").  (*Id.* ¶¶ 4-5.)  Plaintiffs allege that, in connection with the routing of customer stock orders to exchanges or other market centers for execution, Defendants "promise[]" to "consider a wide variety of factors in determining where to direct [client] orders, such as execution price, opportunities for price improvement (which is when an order is executed a price that is more favorable than the displayed national best bid or offer), market depth, order size and trading characteristics of the security, efficient and reliable order handling systems and market center service levels, speed, efficiency, accuracy of executions, and the cost of executing orders at a market."  (*Id.* ¶¶ 1, 22.)  Plaintiffs contend, however, that Defendants have "committed a material breach of this promise" because they "neither 'consider a wide variety of factors' in order-routing nor route[] [their] orders in the manner that is best for [their] customers," but instead, "send[ ] virtually all of [their] customers' orders to the order internalizer or exchange that pays TD Ameritrade the most money for its order flow."  (*Id.* ¶¶ 2, 48.)  Plaintiffs allege that they and the purported class suffered economic injury as a result of exposure to "predatory high frequency trading strategies" and failure to receive best execution from Defendants.  (*Id.* ¶ 35.)

7.      Plaintiffs purport to bring the Action on behalf of themselves and a Class of "[a]ll customers of TD Ameritrade, Inc. or TD Ameritrade Clearing, Inc. who placed a non-directed order with TD Ameritrade, Inc. or TD Ameritrade Clearing, Inc. on or after the date that is five years prior to filing this complaint."  (Compl. ¶ 36).

8.      Plaintiffs seek "appropriate declaratory and injunctive relief."  (Compl. at p. 15.) Plaintiffs also seek to recover "restitutionary damages by requiring Defendants to disgorge the profits they have earned from their material and opportunistic breaches of contract," and allege that Defendants earned payment-for-order-flow revenue of $236 million in 2013, $184 million in

2012, and $185 million in 2011. (*Id.* ¶¶ 33-34.). Plaintiffs additionally demand "expectation damages" and "reasonable attorneys' fees and other litigation costs reasonably incurred, including expert witness fees." (*Id*. at p. 15.)

9.     For the reasons that follow, the Action is removable pursuant to SLUSA, 15 U.S.C. §§ 77p, 78bb, or, in the alternative, CAFA, 28 U.S.C. §§ 1332(d), 1453.

**THE COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO SLUSA**

10.     This Action is removable under SLUSA. An action may be removed to federal court pursuant to SLUSA where: (1) the suit is a "covered class action," (2) the plaintiffs' claims are based on state statutory or common law; *and* (3) plaintiffs *allege* that defendants (A) *either* made an "a misrepresentation or omission of material fact," *or* "used or employed a manipulative or deceptive device or contrivance, *and* (B) did so in connection with the purchase or sale of a "covered security." 15 U.S.C. §§ 77p(b), 78bb(f)(1); *see also Dudek v. Prudential Secs., Inc.*, 295 F.3d 875, 879-80 (8th Cir. 2002) (affirming dismissal of action and denial of remand, reasoning that non-fraud claims alleging improper marketing of annuities were subject to SLUSA). As applied here, each of these requirements is met.

A.     Plaintiffs' Allegations Satisfy SLUSA's "Covered Class Action" Definition.

11.     SLUSA defines a "covered class action" as an action in which "one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members[.]" 15 U.S.C. §§ 77p(f)(2)(i)(II), 78bb(f)(5)(B)(i)(II). Here, Plaintiffs allege that they "bring [the Action] on behalf of themselves and [a Class]" of "[a]ll customers of [Defendants] who placed a non-directed order with [Defendants]" within the last 5 years. (Compl. ¶¶ 21, 36). Plaintiffs also allege that "questions of law or fact common to the Class

4813-0486-8126.2

predominate over any questions affecting only individual members." (*Id.* ¶ 43.) Accordingly, this action is a "covered class action."

        B.      <u>Plaintiffs' Claim Is Purportedly Based on State Law.</u>

12.     SLUSA requires that the plaintiff's claims be based on state statutory or common law. *See* 15 U.S.C. §§ 77p(b), 78bb(f)(1). Here, Plaintiffs purport to assert a breach of contract claim based on state law. (*See* Compl. ¶¶ 8 ("The Client Agreement is governed by Nebraska law."), 23 (same), 45-49 (alleging breach of contract claim).) Therefore, this SLUSA requirement has been satisfied.

        C.      <u>Plaintiffs' Claim is Based Upon Allegations of Misrepresentations or Omissions or a Manipulative or Deceptive Device.</u>

13.     Plaintiffs allege that "TD Ameritrade promises to 'consider a wide variety of factors in determining where to direct [client] orders . . . .'" (Compl. ¶ 1.) Plaintiffs also allege that, over a five-year period, Defendants "opportunistic[ally]" and "blatantly breached" their alleged contractual duties to "consider a wide variety of factors in determining where to direct [client] orders," and "knowingly exposed [their] customers' orders to toxic high frequency trading" in order to receive "kickback" payments. (*Id.* ¶¶ 2-3, 22, 24-26, 34-35.) These allegations plainly fall under the SLUSA umbrella, which covers class actions "*alleging*" misrepresentations or omissions, or manipulative or deceptive devices, as explained below.

14.     Plaintiffs contend that they have not asserted "claims for . . . misrepresentation[] or violations of the federal securities laws" (*id.* ¶ 37), "[b]ut SLUSA stands as an express exception to the well-pleaded complaint rule, and its preemptive force cannot be circumvented by artful drafting." *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 304 (3d Cir. 2005). Indeed, the Eighth Circuit has held that, regardless of whether the complaint explicitly alleges a misrepresentation or omission, the pleadings must be scrutinized to arrive at the gravamen of the

complaint in order to prevent artful drafting that seeks to circumvent SLUSA.  *See*, *e.g.*, *Dudek*, 295 F.3d at 879 (affirming dismissal of complaint and denial of remand on SLUSA grounds because "gravamen [of complaint] . . . involves an untrue statement or substantive omission of a material fact in connection with the purchase or sale of a covered security") (internal quotation omitted); *Prof'l Mgmt. Assoc., Inc. v. KPMG LLC*, 335 F.3d 800, 803 (8th Cir. 2003) (same regarding negligence claims based on misrepresentations and omissions).  Here, Plaintiffs allege that Defendants represented what they did in connection with the routing of customer stock orders to exchanges or other market centers for execution, (*Id.* ¶¶ 1, 22.) when, in fact, Defendants they did not do what they said (according to Plaintiffs).  (*Id.* ¶¶ 2, 48.)  This is the classic form of an allegation of misrepresentation and omission.  Thus, while Plaintiffs attempt to characterize their claim as a broken "promise," the Complaint is based on allegations that Defendants "opportunistic[ally]" and "knowingly" misrepresented or omitted material facts regarding their order routing processes to clients while making clandestine deals for "kickbacks" in exchange for their clients' order flow.  (*See* Compl. ¶¶ 3, 24-26, 33-34.)

15.    The case of *Kurz v. Fidelity Management & Research Co.* is instructive.  No. 07-cv-709, 2008 WL 2397582 (S.D. Ill. June 10, 2008), *aff'd*, 556 F.3d 639 (7th Cir. 2009).   In *Kurz*, the plaintiffs alleged that, because the defendants used a broker to execute trades "in return for lavish gifts, rather than on the basis of best execution," the defendants breached "best execution" provisions contained in trade confirmations when executing trades.   2008 WL 2397582, at *2.  The District Court held that the case was "not a simple breach of contract claim, because neither party to the contract ever had any intention of fulfilling that term of the contracts.  Rather Plaintiff's allegations amount to an allegation that the contracts contained a misrepresentation of a material fact."  *Id.* at *4; *see also, e.g., Kurz*, 556 F.3d at 642 ("How

4813-0486-8126.2

Fidelity discharges its duties toward investors is a subject requiring disclosure under federal law."); *Jaspers v. Prime Vest Fin'l Servs., Inc.*, No. 10-853, 2010 WL 3463389, at *6 (D. Minn. Aug. 30, 2000) (granting motion to dismiss breach of contract and other claims and denying remand on SLUSA grounds concerning commissions paid by mutual fund investors, reasoning that, "[w]hether couched as broken promises or as a different state-law cause of action, however, the heart of these allegations is a misrepresentation"); *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 693-94 (S.D.N.Y. 2006) ("Plaintiffs describe this conduct [*i.e.*, providing non-objective investment advice] as a breach by Morgan Stanley 'of the standardized contracts with the Plaintiffs and Class members,' and so it may have been, but it is also a quintessential example of a fraudulent omission of a material fact under the federal securities laws."); *Prager v. Knight/Trimark Group, Inc.*, 124 F. Supp. 2d 229, 234-35 (D.N.J. 2000) (breach of contract and other state law claims removable pursuant to and barred by SLUSA, where complaint alleged defendant made false and misleading statements relating to best execution while engag[ing] in a four-year "pattern and practice of trading in advance of its retail customers and the selling or buying at a profit at the expense of its customers").

16.     This SLUSA element is additionally (and independently) satisfied because the Complaint also alleges the use of a manipulative or deceptive device, *i.e.*, the payment for order flow.  Plaintiffs dedicate a number of paragraphs to describing how high frequency traders allegedly "pay for the opportunity to exploit less sophisticated investors." (Compl. ¶ 19, *see also generally id.* ¶¶ 11-20, 24-32.)  Specifically, Plaintiffs allege a purported scheme to scam retail investors by selling clients' order flow, thereby exposing clients to "adverse selection risk as well as electronic front-running, and other toxic high-frequency trading strategies." (*See id.* ¶¶ 15 (citing an April 3, 2014 statement from the retail securities brokerage firm Charles Schwab,

which described "the practice of selling preferential access or data feeds . . . and order types that allow high-frequency traders to jump ahead of legitimate order flow" as "simply **tools for scamming individual investors**"  (emphasis added)), 20.)

> D.   The Complaint Alleges that Defendants' Conduct Was in Connection with the Purchase or Sale of Covered Securities.

17.    The Complaint alleges that Defendants engaged in misconduct in connection with the purchase or sale of stock, a "covered security."  (Compl. ¶¶ 1, 4-5.)  "A 'covered security' is one traded nationally and listed on a regulated national exchange."  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 83 (2006); *see also* 15 U.S.C. § 77r(b)(1).  Further, the Supreme Court has consistently applied a "broad construction" to the "in connection with the purchase or sale" phrase.  *See, e.g.*, *Dabit*, 547 U.S. at 85 (applying broad construction to phrase as used in SLUSA); *see also Chadbourne & Park LLP v. Troice*, 123 S.Ct. 1058, 1066-68 (2014) (distinguishing the facts there—concerning purchases of uncovered securities in the defendant, the proceeds of which the defendant had represented would be used to purchase covered securities—from prior actions, such as *Dabit*, that broadly construed the "in connection with" language to cover false statements that were material to an investor's decision to purchase or sell covered securities).[3]

---

[3] The Eighth Circuit decision *Green v. Ameritrade, Inc.*, 279 F.3d 590 (8th Cir. 2002), which held that SLUSA's "in connection with" requirement did not apply to a claim relating to monthly subscription services for real time stock quotes, does not warrant a different conclusion.  As an initial matter, *Green* pre-dates the Supreme Court's decision in *Dabit*, and accordingly, *Green* is abrogated to the extent that the Eighth Circuit narrowly construed the "in connection with" requirement to apply solely to allegations alleging a purchase and sale of securities.  In any event, the breach of contract claim at issue in *Green* was *not* inextricably intertwined with purchases and sales of securities, as is alleged here.  *Compare Green*, 279 F.3d at 598 (alleged failure to provide real time stock quote information, but no allegation of purchase or sale or of covered security), *with* Compl. ¶¶ 2-3, 35 (alleged failure to consider wide variety of factors when routing stock purchase or sale orders supposedly caused Plaintiffs to not "receive[] the best execution on their trades").

18.     Here, Plaintiffs purport to define the Class itself as "[a]ll customers of [Defendants] who placed a non-directed [stock] order with" Defendants (Compl. ¶ 36), reflecting Plaintiffs' contention that Defendants' alleged conduct necessarily occurred "in connection with" the purchase or sale of a covered security.  *See Holtz v. J.P. Morgan Secs. LLC*, 2013 WL 3240181, at *5 (N.D. Ill. June 26, 2013) (finding that, based on class definition, claims were in connection with the purchase or sale of securities).   Moreover, the Plaintiffs allege that they personally executed stock purchases or sales through Defendants (Compl. ¶¶ 4-5), and their allegations are premised on the existence of stock trades made on national exchanges or through order internalizers that "direct[] orders to public exchanges" (*see, e.g.*, *id.* ¶¶ 2 fn. 1, 24, 27-32). As a result of the routing and execution of those trades, Plaintiffs contend that they have been "damaged because they have not received the best execution on their trades, but rather the execution that was best for TD Ameritrade."  (*Id.* ¶ 35.)  Accordingly, plaintiffs' allegations are of conduct in connection with the purchase or sale of covered securities.

## IN THE ALTERNATIVE, THE COURT HAS SUBJECT MATTER JURISDICTION UNDER CAFA

19.     In the alternative to the grounds stated above, this Action is removable pursuant to CAFA. "Under CAFA, federal courts have jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 in the aggregate; there is minimal (as opposed to complete) diversity among the parties, *i.e.*, any class member and any defendant are citizens of different states; and there are at least 100 members in the class." *Hargis v. Access Capital Funding,* LLC, 674 F.3d 783, 788 (8th Cir. 2012) (citation and quotation marks omitted); 28 U.S.C. § 1332(d)(2).  As applied here, each of these requirements is satisfied.

A.     <u>Minimal Diversity Exists in this Action.</u>

20.     CAFA's minimal diversity requirement is satisfied in this Action.  CAFA's minimal diversity requires "any member of a class of plaintiffs [to be] a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  An individual is a citizen of the state in which he is domiciled, *i.e.*, the state that he considers his permanent home.  *Gilbert v. David*, 235 U.S. 561, 569 (1915); *Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir. 1992) (holding that "citizenship" and "domicile" are synonymous and that one's domicile is determined by both presence in the purported state of domicile and one's intention to remain indefinitely).  Here, Plaintiffs are citizens of Massachusetts.  Indeed, Plaintiffs allege that at "at all relevant times"— at least five years based on the putative class definition (Comp. ¶ 36)—they have resided in Massachusetts (Compl. ¶¶ 4-5); moreover, their account statements and publicly available records indicate that they intend to remain indefinitely, based on their long-standing residency, ownership of property in the state, and the existence of drivers' licenses and vehicle registration issued by Massachusetts.  *See* Index of Evidence, Exhibit 2, Declaration of William M. Mann ("Mann Decl.") ¶¶ 5-6 (referring to account statements from 2004 and 2014 that are addressed to Plaintiffs' addresses in Massachusetts); Index of Evidence, Exhibit 3, Declaration of Victoria H. Buter, Exs. A & B (attaching LexisNexis | Accurint reports, which aggregate public records, and which state that, for many years, Plaintiffs have lived in Massachusetts, had Massachusetts drivers' licenses, and owned real property and registered vehicles in Massachusetts); [4] *see also Sheehan*, 967 F.2d at 1216 (considering such factors as property ownership and the state issued driver's license and vehicle registration as indication of intent to remain in state).

---

[4] Courts determining whether the jurisdictional requirements have been met apply the preponderance of the evidence standard.  *See, e.g.*, *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013).  To meet this standard, "Defendants may introduce their own affidavits, declarations, or other documentation . . . ."  *Id.* (quotation and citation omitted).

21.     Defendants are not citizens of Massachusetts.  Rather, Defendants are citizens of Nebraska, and Defendant TD Ameritrade is also a citizen of New York.  *See* Index of Evidence, Ex. 2, Mann Decl. ¶¶ 2-3.  Specifically, TD Ameritrade is incorporated in New York and has its principal place of business in Nebraska, and TD Ameritrade Clearing is incorporated in Nebraska and has its principal place of business in Nebraska.  *Id.*   Under 28 U.S.C. §§ 1332(a) and 1441(b)(2), this would prohibit removal within the state in which the defendant is a citizen. However, this action is a class action that is subject to CAFA (*see* 28 U.S.C. §§ 1332(d), 1453) and, therefore, Defendants' Nebraska citizenship does not preclude removal.  *See* 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446 . . . without regard to whether any defendant is a citizen of the State in which the action is brought[.]").

22.     Given that Plaintiffs are citizens of Massachusetts, and Defendants are citizens of Nebraska and/or New York, minimal diversity exists for purposes of CAFA.  28 U.S.C. §§ 1332(d)(2)(A), 1453.

        B.      <ins>The Amount in Controversy Exceeds $5,000,000 and the Class Consists of Over 100 Members.</ins>

23.     Plaintiffs allege that they seek restitutionary damages requiring disgorgement of profits earned from payment for order flow, and contend that Defendants earned payment-for-order-flow revenue of $236 million in 2013, $184 million in 2012, and $185 million in 2011. (Compl. ¶¶ 33-34 & p. 15.)  Accordingly, this Action plainly satisfies the $5,000,000 amount-in-controversy requirement under CAFA.  *See* 13 U.S.C. § 1332(d)(2); *Raskas*, 719 F.3d at 887 ("[W]hen determining the amount in controversy, the question is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are.") (quotation marks and citation omitted) (emphasis in original).  Further, the prospective

class is greater than the required 100 persons (*see* 28 U.S.C. § 1332(d)(5)(B)): Plaintiffs contend that the purported Class includes "[a]ll customers of [Defendants] who placed a non-directed order with [Defendants]" within the last 5 years, and that, in 2013, Defendants had "over 5.9 million funded client accounts." (Compl. ¶¶ 21, 36; Index of Evidence, Ex. 2, Mann Decl. ¶ 4).[5]

## PROCEDURAL MATTERS

24. <u>Removal to Proper Court.</u>   In compliance with the venue provisions of 28 U.S.C. § 1446(a), this Court is the district court for the district within which the Action was commenced and has been pending.

25. <u>Removal is Timely.</u>  Defendants were served with the Summonses and Complaint in the Action on August 25, 2014, and so removal is timely under 28 U.S.C. § 1446(b).

26. <u>Pleading and Process.</u>   To date, the Summonses and Complaint (which are reproduced as Exhibit 1 hereto in accordance with 28 U.S.C. §1446(a)), as well as requests for certain discovery, constitute the only papers that Plaintiffs have served on Defendants and the only process or pleadings in this Action.

27. <u>Notice to Plaintiffs and State Court.</u>  In compliance with 28 U.S.C. § 1446(d), Defendants is contemporaneously serving written notice of the filing of this Notice of Removal

---

[5] If Plaintiffs contest jurisdiction under CAFA, it will be their burden to establish CAFA's express jurisdictional exceptions. *Westerfeld v. Independent Processing LLC*, 621 F.3d 819, 822 (8th Cir. 2010). Assuming *arguendo* that SLUSA is not applicable, Plaintiffs would be unable to meet that burden under CAFA because none of the exceptions to CAFA would apply here. For example, and without waiver of any defenses to arguments Plaintiffs might seek to advance, the "securities exception" would not apply. That exception exempts from CAFA any action "that solely involves—(1) a claim concerning a covered security . . . [or] (3) a claim that relates to the rights duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security." 28 U.S.C. § 1453(d). Here, if SLUSA were found not to apply, the first securities exception—one involving solely a claim concerning a covered security—necessarily would not apply. *See*, *e.g.*, *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012) (this exception "carves out class actions for which jurisdiction exists elsewhere under federal law, such as under [SLUSA]") (quoting *Estate of Pew v. Cardarelli*, 527 F.3d 25, 30 (2d Cir. 2009)). Moreover, the Action does not relate to the rights and obligations created by or pursuant to any one security. *See, e.g.*, *Cardarelli*, 527 F.3d at 31-32 ("Claims that 'relate [] to the rights . . . and obligations' 'created by or pursuant to' a security must be claims grounded in the terms of the security itself[.]") (citation omitted).

upon all adverse parties (consisting only of Plaintiffs), and is filing a copy of that notice with the clerk of the District Court of Douglas County, Nebraska.

28.    <u>Non-Waiver.</u>  In removing this Action, Defendants do not waive, either expressly or impliedly, any right, defense, affirmative defense or motion that may be available to them, nor do Defendants concede that Plaintiffs are entitled to any of the damages or other relief claimed in the Action.

29.    WHEREFORE, Defendants respectfully remove this Action from the District Court of Douglas County, Nebraska for the reasons and on the grounds set forth above, and for any other reasons the Court deems necessary and proper.

Dated: September 22, 2014

TD AMERITRADE, INC. and TD
AMERITRADE CLEARING, INC., Defendants

By: *s/ Victoria H. Buter*
    Thomas H. Dahlk #15371
    Victoria H. Buter #23841
    KUTAK ROCK LLP
    The Omaha Building
    1650 Farnam Street
    Omaha, Nebraska 68102-2186
    Telephone: (402) 346-6000
    Facsimile: (402) 346-1148
    tom.dahlk@kutakrock.com
    vicki.buter@kutakrock.com

    Of Counsel:

    A. Robert Pietrzak
    Alex J. Kaplan
    Jackie A. Lu
    SIDLEY AUSTIN LLP
    787 Seventh Avenue
    New York, New York 10019
    Telephone: (212) 839-5300
    Facsimile: (212) 839-5599
    rpietrzak@sidley.com
    ajkaplan@sidley.com
    jlu@sidley.com

    *Attorneys for TD Ameritrade, Inc. and TD Ameritrade Clearing, Inc.*

4813-0486-8126.2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on the parties listed below via e-mail and first-class United States mail this 22nd day of September, 2014.

Matthew A. Lathrop
LAW OFFICE OF MATTHEW A.
LATHROP, PC, LLC
2215 Harney Street, Suite 200
Omaha, Nebraska  68102
Matt@LathropLawOmaha.com

Jeffrey C. Block
Joel A. Fleming
BLOCK & LEVITON LLP
155 Federal Street
Boston, Massachusetts  02110
Jeff@blockesq.com
Joel@blockesq.com

By: *s/ Victoria H. Buter*
    Victoria H. Buter

14

4813-0486-8126.2