IN THE UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAY ZOLA, AND JEREMIAH JOSEPH LOWNEY,<br><br>    Plaintiffs,<br><br> vs.<br><br>TD AMERITRADE, INC., AND TD AMERITRADE CLEARING, INC.,<br><br>    Defendants. | **8:14CV288** |
| TYLER VERDIECK, A California Citizen, Individually And On Behalf Of All Others Similarly Situated;<br><br>    Plaintiff,<br><br> vs.<br><br>TD AMERITRADE, INC., a New York Corporation;<br><br>    Defendant.<br>_____ | **8:14CV289** |
| BRUCE LERNER, on Behalf of Himself and All Others Similarly Situated;<br><br>    Plaintiff,<br><br> vs.<br><br>TD AMERITRADE, INC.,<br><br>    Defendant.<br>_____ | **8:14CV325** |
| MICHAEL SARBACKER, Individually and on Behalf of All Others Similarly Situated;<br><br>    Plaintiff,<br><br> vs. | **8:14CV341** |

TD AMERITRADE HOLDING
CORPORATION, TD AMERITRADE INC.,
TD AMERITRADE CLEARING, INC.,
FREDERIC J. TOMCZYK, AND PAUL
JIGANTI,

        Defendants.

_____

GERALD J. KLEIN, on behalf of himself and
all similarly situated,

        Plaintiff,

   vs.

TD AMERITRADE HOLDING
CORPORATION, TD AMERITRADE INC.,
AND FREDRIC TOMCZYK,

        Defendants.

**8:14CV396**

**MEMORANDUM AND ORDER**

This matter is before the court on the plaintiffs' objections, Filing No. 53 in Case

No. 8:14CV288 ("*Zola*"), Filing No. 53 in Case No. 8:14CV289 ("*Verdieck*"), Filing No.

55 in Case No. 8:14CV325 ("*Lerner*"), Filing No. 66 in Case No. 8:14CV341

("*Sarbacker*"), Filing No. 96 in Case No. 8:14CV396 ("*Klein*"), to the Findings and

Recommendation ("F&R") of the United States Magistrate Judge, Filing No. 52 in *Zola*,

Filing No. 52 in *Verdieck*, Filing No. 54 in *Lerner*, Filing No. 64 in *Sarbacker*, and Filing

No. 95 in *Klein*, recommending that this court grant the defendants' (collectively, "TD

Ameritrade's") motions to dismiss in each of these cases, Filing No. 44 in *Zola*, Filing

No. 44 in *Verdieck*, Filing No. 47 in *Lerner*, Filing No. 54 in *Sarbacker*, and Filing No. 79

in *Klein*.[1]  These are purported class actions alleging wrongdoing in connection with stock trades.  Jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332 in the *Zola*, *Verdieck*, *Lerner*, and *Sarbacker* cases and on a federal question under 28 U.S.C. § 1331 in the *Klein* case.[2]  These are purported class actions alleging wrongdoing in connection with stock trades.

I.    FACTS

In their complaints, the plaintiffs, on their own behalf and on behalf of others similarly situated, allege wrongdoing by TD Ameritrade in connection with the execution of stock trades and assert various theories of recovery.  The allegations of each respective plaintiff's complaints are summarized in the Magistrate Judge's F&Rs and need not be repeated here except as necessary to the court's opinion.  *See Zola*, No. 8:14CV288, Filing No. 52, F&R at 1-3; *Verdieck*, No. 8:14CV289, Filing No. 52, F&R at 1-3; *Lerner*, No. 8:14CV325, Filing No. 54, F&R at 1-3; *Sarbacker*, No. 8:14CV341, Filing No. 64, F&R at 1-3; *Klein*, No. 8:14CV396, Filing No. 95, F&R at 1-5.

The record shows that defendant TD Ameritrade Holding Corporation, is the parent company and sole equity holder of TD Ameritrade, Inc.; defendant TD Ameritrade, Inc., is a financial services company that acts as a broker-dealer and is

---

[1] In connection with their motions to dismiss, TD Ameritrade moved for judicial notice of certain sections of the Federal Register and Code of Federal Regulations, as well as excerpts from a June 17, 2014, transcript for a hearing before a U.S. Senate subcommittee.  *See. e.g., Klein*, Filing No. 79, Motion at 2.  The plaintiffs did not object to taking judicial notice of the documents, which are embraced by the Complaint.  *See Klein*, No 8:14CV396, F&R at 2; *See generally* Filing No. 87 - Response & p. 49 n.10.  The plaintiffs in the *Lerner* and *Verdieck* cases have submitted a notice of recent regulatory guidance, *Lerner*, No. 8:14CV325, Filing No. 62; *Verdieck*, 8:14CV289, Filing No. 60.  The court will consider those materials to the extent they are relevant.

[2] Specifically, the plaintiff in the *Klein* case alleges securities fraud under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b0 and 78t, and Rule 10b-5, 17 C.F.R. 240.10b-5.

engaged in trading stocks and bonds; defendant TD Ameritrade Clearing, Inc., is a wholly-owned subsidiary that provides trade execution and clearing services; defendant Fredric Tomczyk is the Chief Executive Officer of TD Ameritrade; and defendant Paul Jiganti is alleged to be the Managing Director of Market Structure and Client Advocacy for TD Ameritrade Holding Corp. and is allegedly responsible for determining the most effective way to manage client order routing. The plaintiffs are clients and customers of TD Ameritrade who have purchased exchange-listed stocks and executed trades through TD Ameritrade as a broker. In their complaints, all of the plaintiffs allege TD Ameritrade failed to properly execute their trades, although they seek recovery under various state and federal theories.

In *Zola*, plaintiffs Jay Zola and Jeremiah Joseph Lowney assert only a state-law claim for breach of contract.[3] *Zola*, No. 8:14CV288, Filing No. 1-1, Complaint. Verdieck asserts a state law claim for breach of fiduciary duty and seeks declaratory relief and imposition of a constructive trust. *Verdieck*, No. 8:14CV289, Filing No. 1, Complaint. Lerner asserts claims for breach of fiduciary duty, violations of the Nebraska Consumer Protection Act ("NCPA"), unjust enrichment, and declaratory relief. *Lerner*, No. 8:14CV325, Filing No. 1, Complaint. Sarbacker alleges breach of contract, fraud by intentional misrepresentation or omission, negligent misrepresentation, NCPA violations, and aiding and abetting. *Sarbacker*, No. 8:14CV341, Filing No. 1, Complaint. He also asserts claims for control person liability against Tomczyk and Jiganti. *Id.*

---

[3] The *Zola* action was originally filed in the District Court of Douglas County, Nebraska, but was removed pursuant to the 15 U.S.C. §§ 77p and 78bb (the Securities Litigation Uniform Standards Act of 1998 ("SLUSA")) or, in the alternative, pursuant to 28 U.S.C. §§ 1332(d) and 1453 (the Class Action Fairness Act ("CAFA")). *See Zola*, Filing No. 1, Notice of Removal at 1.

4

Klein[4] alleges violations of §§ 10(b)(5) and 20(a) of the Securities Exchange act of 1934 and asserts state-law claims for breach of fiduciary duty, and for violations of the Nebraska Uniform Deceptive Trade Practices Act ("UDTPA"), Neb. Rev. Stat. § 87-301, *et seq.* *Klein*, No. 8:14CV396, Filing No. 75, Amended Complaint. Plaintiff Klein additionally alleges that Mr. Tomczyk, as the Chief Executive Officer of TD Ameritrade, violated Section 20(a) of the Exchange Act as a control person of TD Ameritrade. *See id.* Klein's complaint also contains detailed allegations relating to class-action status. *See id.* at 38-42.

Essentially, all of the plaintiffs challenge TD Ameritrade's alleged practice of routing virtually all of its customers' orders and trades in contravention of its purported duties and/or contractual obligations to "best execute" the trade. All five actions were commenced by customers of TD Ameritrade and each case involves assertions that TD Ameritrade failed to seek best execution on certain customer orders because TD

---

[4] The *Klein* action was originally filed in the District of New Jersey and then transferred to this court on a consent motion for a change of venue under 28 U.S.C. § 1404. *See Klein*, Filing Nos. 19, Motion and 26, Order. Prior to the transfer, the United States District Court for the Southern District of New Jersey granted the proposed lead plaintiff's unopposed motion to appoint class members Kwok L. Shum and Roderick Ford (collectively, the "Shum Group") as Lead Plaintiff and approved the selection of the law firm of Levi & Zorinsky LLP to serve as Lead Counsel and the firm of Lite DePalma Greenberg, LLC to serve as Liaison Counsel under Section 21D(a)(3)(B) of the PSLRA, 15 U.S.C. §§ 78u-4(a)(3)(B); 78u-4(a)(3)(B)(v). *Id.*, Filing No. 27. For ease of reference, the parties' plaintiff will be referred to collectively as "Klein."

The unopposed motion to transfer was based in part on the pendency of four similar cases arising out of the same core allegations asserted in *Klein*. *See id.*, Filing No. 19-1, Brief at 3-5. After the transfer, TD Ameritrade moved to consolidate the cases and plaintiff Klein moved for leave to file an amended complaint. *Id.*, Filing No. 50; *Zola*, No. 8:14CV288, Filing No. 32; *Verdieck*, No. 8:14CV289, Filing No. 29; *Lerner*, No. 8:14CV325, Filing No. 31; *Sarbacker*, No. 8:14CV341, Filing No. 38. The plaintiffs in the other pending cases opposed the *Klein* motion and moved to coordinate the other four cases for discovery and to appoint lead counsel. *See Zola*, No. 8:14CV288, Filing No. 25; *Verdieck*, No. 8:14CV289, Filing No. 21; *Lerner*, No. 8:14CV325, Filing No. 23; *Sarbacker*, No. 8:14CV341, Filing No. 12. The magistrate judge denied the motions, stating the parties' "separate interests in case management and presentation may suffer if the cases are consolidated prior to resolution of the defendants' forthcoming motions to dismiss." *Klein*, No. 8:14CV396, Filing No. 69, Order at 6.

Ameritrade routed orders to exchanges and market centers that provided payment for order flow. Each of the plaintiffs make allegations that are substantially similar in all material respects to those that Klein asserts concerning TD Ameritrade's order routing processes and best execution obligations.[5] Because only the *Klein* action asserts a federal securities fraud claim, the court will focus on the *Klein* complaint.

In a 52-page Amended Complaint, the plaintiff in *Klein* alleges that TD Ameritrade has a practice of routing orders to various venues for execution.[6] *Id.* at 2. Klein alleges that "[r]ather than route its clients' non-directed, non-marketable limit orders to the venue(s) which would provide the best execution, TD Ameritrade instead sent such orders to the venues which would provide the highest liquidity rebates, payments made by the venues to TD Ameritrade relating to the number and size of orders that were routed." *Id.* at 3. He further alleges that TD Ameritrade has adopted the "maker/taker model"—through which an Exchange charges a fee to an entity that "takes" liquidity (i.e., that buys a stock) and pays a rebate to an entity that "makes"

---

[5] The complaints differ little in material allegations. Briefly, in *Zola*, the plaintiffs allege that TD Ameritrade, Inc. and TD Ameritrade Clearing, Inc. breached a client agreement by allegedly failing to obtain best execution because they supposedly routed customer orders solely on the basis of payment for order flow. *See Zola*, No. 8:14CV288, Filing No. 1-1, Complaint. In *Verdieck*, the plaintiff alleges that TD Ameritrade breached fiduciary duties and the duty of best execution by routing non-marketable limit orders to a particular market venue in exchange for liquidity rebates. *Verdieck,* 8:14CV289, Filing No. 1, Complaint. Similarly, the *Lerner* action alleges that TD Ameritrade improperly routed non-marketable limit orders to trading venues solely on the basis of whether TD Ameritrade would receive liquidity rebates and asserts claims for breach of fiduciary duty for failure to obtain best execution, unjust enrichment, declaratory judgment, and violation of the NCPA. *Lerner*, 8:14CV 325, Filing No. 1, Complaint. In *Sarbacker*, the plaintiff alleges fraud in TD Ameritrade's failure to provide its customers with best execution, instead routed customer orders to the trading venue that offered TD Ameritrade the largest payments for its orders, and exposed their clients to "toxic High frequency trading resulting in lost profits and lost opportunities for the class. *Sarbacker*, No. 8:14CV341, Filing No. 1, Complaint.

[6] Klein explains that "[b]rokers have various venues at their disposal to which orders can be routed," including "exchanges, regional exchanges, electronic communications networks ("ECNs"), and third market makers (i.e., dealers that buy and sell orders even if there is not a buyer or seller immediately available for the other side of a transaction)." *Klein*, No. 8:14CV396, Filing No. 75, Amended Complaint at 2.

liquidity (i.e., that sells the stock) and of receiving payments for order flow. Filing No. 75, Amended Complaint at 9-10. The Amended Complaint also describes TD Ameritrade's relationships with several vendors over time, particularly with Direct Edge, whose practices were the subject of a consent settlement with the Securities Exchange Commission. *Id.* at 23-25.

The plaintiff alleges that TD Ameritrade stated in a press release on June 12, 2014, that it "employs sophisticated order routing technology and processes to help it meet its obligations to seek best execution for client orders." *Id.* at 12. Klein also alleges that Fred Tomczyk made public statements to that effect. *Id.* at 12-13. Similar statements are allegedly included in TD Ameritrade's 10-K, filed Nov 22, 2103. *Id.* at 13. Klein alleges TD Ameritrade also made the following representations to institutional investors:

> We use proprietary order execution strategies to help get the best pricing for clients. This can potentially maximize the value of portfolios and helps you meet your fiduciary responsibility.
> Our strategy uses a sophisticated order router to get client orders filled completely as quickly as possible at the best price reasonably available.

*Id.* at 13. Klein alleges that those proprietary execution strategies were not extended to retail customers, allowing institutional investors to effectively jump the queue and "hijack price improvements" that would no longer be available to retail investors. *Id.* at 25.[7]

---

[7] These allegations correspond to allegations in the complaints in the other cases that TD Ameritrade's order-routing strategies gave unfair advantages to high frequency traders ("HFTs") at the expense of putative class members' trades, effectively allowing high frequency traders to jump ahead of plaintiffs to the front of the trading line. *See, e.g., Verdieck*, No. 8:14CV289, Filing No. 1, Complaint at 3, 12-14; *Sarbacker*, No. 8:14CV341, Filing No. 1, Complaint at 20-22.

The amended complaint contains detailed allegations concerning defendants' maximization of order routing payments. *Id.* at 16-19. Klein also cites academic research and industry analyses that demonstrate that TD Ameritrade's practices are not consistent with a broker's duty of best execution. *Id.* at 4, 32-36. Klein also alleges, based on proprietary limit order data, "that several measures of limit order execution quality (including fill rates, execution speed, and realized spreads) are negatively related to the level of an exchange's take fee." *Id.* at 34. The plaintiff also alleges that TD Ameritrade radically modified its routing behavior in 2011 and began routing nonmarketable limit orders to the venues that would maximize their rebates. *Id.* at 15-18.

Plaintiff also states that TD Ameritrade negotiated agreements providing for greater payments for order flow or liquidity rebates from venues than the amounts the venues were paying to other brokers and that by receiving higher payments for order flow that their competitors, TD Ameritrade negatively impacted its clients' chances for price improvement. *Id.* at 37. Klein also alleges that by designating its clients' orders as "retail," TD Ameritrade creates an information asymmetry between its clients and sophisticated traders who pay for access to proprietary data feeds. *Id.* at 28.

Klein also states in the Amended Complaint that:

[The Financial Industry Regulatory Authority ("FINRA")][8] listed order routing practices and best execution of customer trades as a priority area

---

[8] FINRA's authority derives from an amendment to the Securities Exchange Act of 1934, which provided for the creation of a regulatory entity to supervise the securities industry subject to the oversight of the Securities and Exchange Commission (SEC). 15 U.S.C. § 78s. FINRA is a private, non-profit corporation that is registered with the Securities and Exchange Commission (SEC) as a "national securities association." *Aslin v. FINRA*, 704 F.3d 475, 476 (7th Cir.2013). FINRA acts as a self-regulatory organization that oversees the securities market and creates and enforces rules which govern

> of focus for the upcoming year.  In its '2015 Regulatory and Examination Priorities Letter,' dated January 6, 2015, FINRA reported it was 'presently conducting a sweep of firms that route a significant percentage of their unmarketable customer limit orders to trading venues that provide the highest trading rebates for providing liquidity.

*Id.* at 36-37.  FINRA further noted its concern "that firms may receive inferior executions of their customers' unmarketable limit orders because of market movements during the pendency of the orders, while the firm still collects a trading rebate," and is in the process of reviewing routing decisions and how such decisions are impacted by rebates.  *Id.* at 36.

Plaintiff Klein alleges that TD Ameritrade's routing of orders to the venues offering the highest order flow payments amounts to a routing strategy that is inimical to best execution.  Further, Klein alleges that TD Ameritrade has profited in the amount of one billion dollars as a result of improperly routing orders based on the distinction between a marketable and non-marketable order, stating that "[i]n a June 12, 2014 press release, TD Ameritrade disclosed that from 2011 through 2013, it received at least $605 million in payments for order flow alone."  *Id.* at 4.  Klein sets forth in great detail the harmful impact that TD Ameritrade's routing practices had on its clients' orders.  *See e.g., id.* at 5, 29, 31-32.  He alleges that by routing orders with TD Ameritrade, retail investors suffered from information asymmetry with sophisticated traders and were denied opportunities to obtain the best price and post-execution performance.  *Id.* at 5.  The deleterious effect on order execution is demonstrated by citation to numerous studies that found that nonmarketable limit orders routed to

---

that industry, alongside and subject to significant oversight from the Securities and Exchange Commission. *Id.*

exchanges with higher rebates were as much as 25 percent less likely to be executed and marketable limit orders placed on venues that paid higher liquidity rebates were executed at prices inferior to orders on venues with lesser/no rebates, costing investors as much as $5 billion per year, respectively. *Id.* at 29-34. He alleges that TD Ameritrade sacrificed speed, fill-rate, and other factors that enter into a proper best execution analysis by prioritizing TD Ameritrade's own revenue generating opportunities. *Id.* The plaintiff alleges that TD Ameritrade continues to route "virtually" all orders to the venue providing TD Ameritrade with the best revenue opportunities for itself. *Id.* at 19.

Klein also alleges that Defendant Tomczyk participated in the operation and management of TD Ameritrade, and conducted and participated, directly and indirectly, in the conduct of TD Ameritrade's business affairs. *Id.* at 46. By virtue of his position as CEO, Defendant Tomczyk knew that TD Ameritrade was pursuing a policy of routing orders in order to maximize payment for order flow and the receipt of liquidity rebates at the expense of achieving best execution of its clients' orders. *Id.*

In its motions to dismiss the respective complaints, TD Ameritrade asserts preemption under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §77p, regulatory preemption, and failure to state a claim as grounds for dismissal of all the state-law claims. It also contends that the securities fraud claim asserted in the *Klein* action is subject to dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

The magistrate judge recommended granting the motions to dismiss all of the plaintiffs' state-law claims as preempted under SLUSA, denying the motions to dismiss

10

the state law claims by reason of regulatory preemption, and granting the motions to dismiss all of the respective plaintiffs' claims for failure to state a claim. *See Zola*, No. 8:14CV288, Filing No. 52, F&R at 3-22; *Verdieck*, No. 8:14CV289, Filing No. 52, F&R at 3-19; *Lerner*, No. 8:14CV325, Filing No. 54, F&R at 3-20; *Sarbacker*, No. 8:14CV341, Filing No. 64, F&R at 3-24; *Klein*, No. 8:14CV396, Filing No. 95, F&R at 3-18. With respect to SLUSA preemption, the magistrate judge recommended dismissal of state law fraud, breach of fiduciary duty, unjust enrichment, and statutory claims. *See, e.g., Verdieck,* No. 8:14CV289, Filing No. 52 at 3-7. The magistrate judge found that the respective plaintiffs' allegations of misrepresentation and omission "concern the best execution of the trades" and that "the alleged misrepresentations or omissions coincide with the purchase or sale of covered securities" and is accordingly covered by SLUSA. *See, e.g., Klein*, No. 8:14CV396, Filing No. 95, F&R at 5. Similarly, the magistrate judge rejected the argument that the *Zola* action presents a pure contract claim not subject to SLUSA preemption. *Zola*, No. 8:14CV288, Filing No. 52, F&R at 5-6. Employing a fair reading of the substance of the allegations, the magistrate judge found the plaintiffs in *Zola* implicitly allege a claim that is based on misrepresentations and omissions and is subject to dismissal under SLUSA. *Id.*

With respect to plaintiff's securities fraud allegations in *Klein*, the magistrate judge found the allegations were "based on the defendants' representations they route trade orders after consideration of a variety of factors in compliance with their duty of best execution, but instead routed orders based on the single factor to obtain the highest order flow payments and liquidity rebates." *Klein*, No. 8:14CV396, Filing No. 95, F&R at 19. The magistrate judge found that although Klein's allegations "support an

inference the defendants considered order flow payments when routing orders," Klein had failed to allege any "reasonable or plausible inferences about whether the defendants relied upon or neglected any other factor." *Id.* Further, the magistrate judge found Klein failed to adequately allege actual economic harm. *Id.* at 20-21. Accordingly, the magistrate judge recommended dismissal of Klein securities fraud claim for failure to state a claim. *Id.* at 24.

The plaintiffs object to the magistrate judge's recommendations of dismissal, and defendant TD Ameritrade opposes the objections. Several parties seek leave to amend should this court grant the motions to dismiss. *See, e.g., Klein*, No. 8:14CV396, Filing No. 96, Objection at 22; *Sarbacker*, No. 8:14CV341, Filing No. 66, Objection at 3. *Lerner*, No 8:14CV325, Filing No. 55, Objection at 15.

The court finds the magistrate judge's recommendations should be adopted in part and denied in part, as discussed below. The court agrees with the magistrate judge's recommendation to grant the motions to dismiss all of the respective plaintiffs' state-law claims as barred under SLUSA. That finding makes it unnecessary to address the defendant's regulatory preemption or failure-to-state-a-claim arguments as to the state-law claims. The court disagrees, however with the magistrate judge's recommendation that Klein's federal securities fraud claim should be dismissed for failure to state a claim.

II.    LAW

A.    Standard of Review

The Supreme Court has construed the statutory grant of authority conferred on magistrate judges under 28 U.S.C. § 636 to mean that nondispositive pretrial matters

are governed by § 636(b)(1)(A) and dispositive' matters are covered by § 636(b)(1)(B). *Gomez v. United States*, 490 U.S. 858, 873-74 (1989); *see also* Fed. R. Civ. P. 72(a). With respect to dispositive motions, a magistrate judge lacks authority to do anything but make recommendations, which are subject to de novo review. *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); 28 U.S.C. § 636(b)(1).

B. Pleading Standards

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows a defendant to move for dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kelly v. City of Omaha,* No. 14-3446, 2016 WL 660117, at *2 (8th Cir. Feb. 18, 2016); (quoting *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this determination, the court must draw all reasonable inferences in favor of plaintiffs. *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009). The court must accept all factual allegations as true, but is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Demien Const. Co. v. O'Fallon Fire Prot. Dist.*, No. 14-3857, 2016 WL 374422, at *2 (8th Cir. Feb. 1, 2016) (quoting *Carton v. General Motors Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010)).

Fraud claims are subject to a heightened pleading standard. Fed. R. Civ. P. 9(b). That rule requires plaintiffs to allege the circumstances constituting fraud with particularity. *Id.* Rule 9 is interpreted "'in harmony with the principles of notice pleading,' and to satisfy it, the complaint must allege 'such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (quoting *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Allegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity requirement, except "when the facts constituting the fraud are peculiarly within the opposing party's knowledge." *Drobnak*, 561 F.3d at 783-84 (stating that the rule is satisfied if the allegations are accompanied by a statement of facts on which the belief is founded). Rule 9(b) does not require that the exact particulars of every instance of fraud be alleged, so long as the complaint includes enough detail to inform the defendant of the "core" factual basis for the fraud claims. *See Commercial Property Invs. v. Quality Inns Int'l*, 61 F.3d 639, 646 (8th Cir. 1995).

When alleging a violation of section 10(b) or Rule 10b–5, the pleading standard for certain elements is even higher. *See* Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104–67, § 101(b), 109 Stat. 737, 743–49 (*codified at* 15 U.S.C. § 78u–4); 15 U.S.C. § 78u–4(b); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313–14 (2007). Under the PSLRA, a securities fraud complaint must: (1) "specify each statement alleged to have been misleading, the reason or reasons why

the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed"; and (2) "state with particularity facts giving rise to a strong inference that the defendant[s] acted with the required state of mind." 15 U.S.C. § 78u–4(b)(1)–(2).

Notwithstanding the heightened pleading standard, a court facing a Rule 12(b)(6) motion must still accept all factual allegations in the complaint as true. *Tellabs, Inc.* 551 U.S. at 322; *Podraza v. Whiting*, 790 F.3d 828, 837 (8th Cir. 2015). In the PSLRA context, courts must "consider the complaint in its entirety along with other sources normally examined by courts in a Rule 12(b)(6) motion[.]" *Tellabs, Inc.*, 551 U.S. at 323 (stating "in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *see Podraza*, 790 F.3d at 837 (considering SEC filings and correspondence in connection with motion to dismiss).

### C.    Securities Fraud

Section 10(b) of the Exchange Act prohibits using or employing, "in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance . . . ." 15 U.S.C. § 78j(b). Rule 10b–5, promulgated thereunder, makes it illegal to "make any untrue statement of a material fact or to omit to state a material fact . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5.40 The elements of a private securities fraud claim based on violations of § 10(b) and Rule 10b–5 are: '"(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and

(6) loss causation.'" *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 155 (2008)(holding that loss causation—proof that the defendant's deceptive conduct caused their claimed economic loss—need not be shown to obtain class certification); *see Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005).

"For claims with a scienter component, which includes claims under Rule 10b–5, the allegations should give rise to more than just a plausible or reasonable inference of scienter." *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 920 (8th Cir. 2015) (quoting *McCrary v. Stifel, Nicolaus & Co., Inc.*, 687 F.3d 1052, 1056 (8th Cir. 2012)). For material misrepresentation and omission claims, the court must also determine "whether the claims 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading.'" *Julianello*, 791 F.3d at 920 (quoting *McCrary*, 687 F.3d at 1056)); 15 U.S.C. § 78u–4(b)(1)).

The inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc.,* 551 U.S. at 324. "To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 323-24. The inference that the defendant acted with scienter need not be irrefutable, *i.e.,* but must be more than merely reasonable or permissible—it must be cogent and compelling, thus strong in light of other explanations. *Id.* at 324. "Motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter interference." *Id.* at 325. A complaint survives a motion to dismiss "only if a reasonable person would deem the

inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324 & n.5 (also noting that "[i]t is improbable that Congress, without so stating, intended courts to test pleadings, unaided by discovery, to determine whether there is "no genuine issue as to any material fact.")

Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action. *Stoneridge Inv. Partners, LLC,* 552 U.S. at 159. A presumption of reliance may apply in § 10(b) cases in which plaintiffs have alleged that defendants failed to disclose information or has made fraudulent misrepresentations. *Affiliated Ute Citizens of the State of Utah v. United States,* 406 U.S. 128, 154 (1972). When a plaintiff's fraud claims are based on omissions, reliance may be satisfied so long as the plaintiff shows that defendants had an obligation to disclose the information and the information withheld is material. *Id.* If there is an omission of a material fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance. *Id.* at 153-54.

Section 20(a) provides for liability for persons and entities who "directly or indirectly" control a primary violator of the federal securities laws. 15 U.S.C. § 78t(a). Control, undefined in the statute, "has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a 'controlling person' liable." *Lustgraaf v. Behrens,* 619 F.3d 867 (8th Cir. 2010) (quoting *Farley v. Henson,* 11 F.3d 827, 836 (8th Cir. 1993)). To state such a claim, a plaintiff must prove:

> (1) that a 'primary violator' violated the federal securities laws; (2) that 'the alleged control person actually exercised control over the general operations of the primary violator'; and (3) that 'the alleged control person possessed—but did not necessarily exercise—the power to determine the

specific acts or omissions upon which the underlying violation is predicated.'

*Lustgraaf*, 619 F.3d at 873 (quoting *Farley*, 11 F.3d at 835).  Absent a primary violation, a claim for control-person liability must fail.  *Id.* at 874.  The second and third prongs are scrutinized according to ordinary notice-pleading standards.  *Id.* at 875.

> D. SLUSA Preclusion/Duty of Best Execution

SLUSA is part of a series of reforms targeting abuse of the class action vehicle in litigation involving nationally traded securities.  *Lim v. Charles Schwab & Co.*, No. 15-CV-02074-RS, 2015 WL 7996475, at *5 (N.D. Cal. Dec. 7, 2015), *appeal docketed,* No. 16-15189 (9th Cir. Feb. 8, 2016); *see Merrill, Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006); *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 636 (2006).  SLUSA is designed to prevent plaintiffs from migrating to state court in order to evade rules for federal securities litigation in the PSLRA.  *Kurz v. Fidelity Mgm't & Research Co.*, 556 F.3d 639, 640 (7th Cir. 2009).  SLUSA provides that private state-law "covered" class actions alleging untruth or manipulation in connection with the purchase or sale of a "covered" security may not "be maintained in any State or Federal court."  *Kircher,* 547 U.S. at 637 n. 1; *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 83 (2006); 15 U.S.C. §§ 77p(b), 78bb(f)(1).  "SLUSA is a preclusion, and not a preemption, statute."  *Id.*  SLUSA "does not itself displace state law with federal law but makes some state-law claims nonactionable through the class-action device in federal as well as state court."  *Kircher*, 547 U.S. at 636 n.1.; *see Dabit*, 547 U.S. at 87 (noting that "SLUSA does not actually pre-empt any state cause of action.  It simply denies plaintiffs the right to use the class-action device to vindicate certain claims.")

SLUSA only precludes a claim where four conditions are met: (1) the underlying suit is a "covered class action"; (2) the claim is based on state law; (3) the claim concerns a "covered security"; and (4) the plaintiff alleges "a misrepresentation or omission of material fact," or "a manipulative or deceptive device or contrivance, in connection with the purchase or sale of a covered security." *See Green v. Ameritrade, 279 F.3d 590, 596 (8th Cir. 2001).* In assessing whether a plaintiff's claims "revolve around the premise that [the defendant] made 'a misrepresentation or omission or employed any manipulative or deceptive device' . . . SLUSA 'operates wherever deceptive statements or conduct form the gravamen or essence of the claim.'" *Lim,* No. 15-CV-02074-RS, 2015 WL 7996475, at *5 (quoting *Freeman Invs., L.P. v. Pacific Life Ins. Co., 704 F.3d 1110, 1114 (9th Cir. 2013)).* A security "covered" under SLUSA is "one traded nationally and listed on a national exchange." *Dabit, 547 U.S. at 83.* "A 'covered class action' is a lawsuit in which damages are sought on behalf of more than 50 people." *Id.* "A fraudulent misrepresentation or omission is not made 'in connection with' . . . a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'" *Chadbourne & Parke LLP v. Troice, 134 S. Ct. 1058, 1066 (2014).*

In determining whether SLUSA applies, courts do not rely on the names of the causes of action that the plaintiff alleges. *Kutten v. Bank of America, N.A., 530 F.3d 669, 670-71 (8th Cir. 2008).* Instead, the court looks "at the substance of the allegations, based on a fair reading." *Id.; see Sofonia v. Principal Life Ins. Co., 465 F.3d 873, 879–80 (8th Cir. 2006); Dudek v. Prudential Sec., Inc., 295 F.3d 875, 879–80 (8th*

Cir. 2002). "SLUSA preemption is based on the conduct alleged, not the words used to describe the conduct." *Kutten*, 530 F.3d at 671.

"NASD's rules themselves are part of the regulatory apparatus of federal securities regulation." *Kurz*, 556 F.3d at 641 (noting that some of its rules are the source of legal duties and stating that "not revealing to investors a failure to comply with ones duties about transactions in their securities can lead to liability under securities acts"). Best execution obligations are regulated by the Financial Industry Regulatory Authority ("FINRA"). *See, e.g.*, FINRA Rule 5310, http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=12144; FINRA Regulatory Notice 15-46, http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=12144 (Nov. 20, 2015); Securities Exchange Act Release No. 34902 (October 27, 1994), 59 FR 55006, 55007 at n.15 (November 2, 1994) ("Payment for Order Flow release"). Claims involving alleged violations of the duty imposed on a broker to obtain best execution for customers in executing portfolio transactions are claims "in connection with" the purchase or sale of securities for SLUSA purposes. *Kurz v. Fidelity Mgmt. & Research Co.*, No. 07-CV-709-JPG, 2007 WL 3231423, at *8 (S.D. Ill. Oct. 30, 2007), *subsequent determination*, 2007 WL 3231423 (S.D. Ill. Oct. 30, 2007), *aff'd*, 556 F.3d at 642; *see, e.g., Behlen v. Merrill Lynch*, 311 F.3d 1087, 1094 (11th Cir. 2002) (holding that SLUSA's "in connection with" requirement was satisfied in a case alleging breach of contract, breach of fiduciary duty, misrepresentation, suppression, unjust enrichment, and negligence on the grounds that a brokerage firm and a mutual fund manager sold investors a certain class of fund shares in order to collect excess fees and commissions

20

on the sales); *McCullagh v. Merrill Lynch & Co.*, No. 01 Civ. 7322(DAB), 2002 WL 362774, at *4 (S.D.N.Y. Mar. 6, 2002) (holding that SLUSA's "in connection with" requirement was satisfied in an action seeking disgorgement of allegedly excessive commissions paid to an investment broker).

"Best execution—getting the optimal combination of price, speed, and liquidity for a securities trade affects the net price investors pay or receive for securities and is accordingly widely understood as a subject of regulation under the Securities and Exchange Act of 1934 and related laws, such as the Investment Advisors Act of 1940 and the Investment Company Act of 1940." *Kurz*, 556 F.3d at 640 (involving allegations that the defendant had either misrepresented that best execution would be achieved, or failed to disclose that best execution was not being achieved). "Put another way, '[t]he duty of best execution, which predates the federal securities laws,' requires 'that a broker-dealer seek to obtain for its customer orders the most favorable terms reasonably available under the circumstances.'" *Last Atlantis Capital LLC v. AGS Specialist Partners*, 749 F. Supp. 2d 828, 832 (N.D. Ill. 2010) (quoting *Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 270 (3d Cir. 1998)), *order clarified*, No. 04 C 397, 2011 WL 223798 (N.D. Ill. Jan. 21, 2011). "Other terms in addition to price are also relevant to best execution." *Newton*, 135 F.3d at 270 n. 2 (stating that "[i]n determining how to execute a client's order, a broker-dealer must take into account order size, trading characteristics of the security, speed of execution, clearing costs, and the cost and difficulty of executing an order in a particular market.").

"The SEC considers the failure to provide best execution a possible 'manipulative, deceptive or other[wise] fraudulent device'" *Lim*, No. 15-CV-02074-RS,

2015 WL 7996475, at *5 (quoting *In Re: Morgan Stanley & Co Inc., Exchange Act Release No.* 55726, 2007 WL 1364323, at *8 (May 9, 2007)).  Any argument "that the duty of best execution is not 'in connection with the purchase or sale' of securities" is frivolous." *Kurz*, 556 F.3d at 642 (finding in circumstances similar to those presented herein that "[w]hat does produce a claim is securities law" and finding the plaintiff therein "had a federal securities claim or he had nothing"); *see Dabit*, 547 U.S. at 85-87 (broadly interpreting the phrase "in connection with the purchase and sale" of securities); *S.E.C. v. Zandford*, 535 U.S. 813, 825 (2002) (stating that when the securities transactions and breaches of fiduciary duty coincide in a fraudulent scheme, those breaches are "in connection with" securities sales within the meaning of § 10(b)).

### E.    Leave to Amend

Whether to permit a plaintiff to amend its complaint is a matter committed to a court's "sound discretion." *Strougo v. Barclays PLC*, 105 F. Supp.3d 330, 340 (S.D.N.Y. 2015), *appeal docketed*, No. 16-450 (2d Cir. Feb 16, 2016).  The Federal Rules provide that leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "'When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.'"  *Id.* (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir.1999)).  "In particular, it is the usual practice to grant at least one chance to plead fraud with greater specificity when a complaint is dismissed under Rule 9(b)."  *Id.* (quoting *ATSI Comms., Inc.,* 493 F.3d 87, 108 (2d Cir. 2006); *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend."): *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284–85 (3rd Cir. 1992) ("Ordinarily, such claims are dismissed with leave to amend.").  The general

rule is "that the plaintiffs' failure to move to amend 'is not necessarily fatal as long as they show a willingness to amend the complaint.'" *Drobnak*, 561 F.3d at 787 (quoting *Wisdom v. First Midwest Bank*, 167 F.3d 402 (8th Cir. 1999)). Leave to re-plead is liberally granted in early stages of litigation, but nonetheless leave is only "given when factors such as undue delay or undue prejudice to the opposing party are absent." *SCS Commc'ns, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 345 (2d Cir. 2004).

III.   DISCUSSION

A.   State Law Class Action Claims

The court will first adopt the magistrate judge's recommendation that the state law claims be dismissed as precluded under SLUSA. The court agrees with the magistrate judge's finding that each of the state-law claims in the plaintiffs' respective complaints stems from TD Ameritrade's allegedly deceptive conduct. Material misrepresentations and omissions serve as the factual predicate for all of the plaintiffs' state law class action claims. No plaintiff can credibly contend that the actions involve an ostensibly "pure" breach of contract claim. The plaintiffs' state law claims are all based on TD Ameritrade's representation that it would provide best execution and failure to fulfill the promise of "best execution," knowing that instead of providing best execution, it knowingly routed nearly all of its order flow to certain venues in exchange for payment. *See e.g., Lim*, 2015 WL 7996475, *8. The basis for state-law breach of contract claims are undisclosed conflicts of interest and omissions of material fact by TD Ameritrade. Those claims are "in connection with" the purchase or sale of securities for SLUSA purposes.

The plaintiffs' respective complaints all involve allegations that TD Ameritrade's conduct caused them to obtain less than the best possible price for their securities. The alleged deception relates to the value of the security because TD Ameritrade represents it obtains the best possible price for its customers but delivers something less, while at the same time generating revenue for itself. The representation of "best execution" induces customers to trade with TD Ameritrade instead of competing brokers, and is material to every purchase or sale of a security through TD Ameritrade. "The contention that plaintiffs made investment decisions without regard to the price at which their orders were filled is, at bedrock, simply implausible." *Lim,* 2015 WL 7996475, at *7.

Each of the class action state-law claims asserted in these five cases is based on deceptive conduct in connection with a securities transaction. As a result, the plaintiffs' purported class-action claims for breach of contract, breach of fiduciary duty, intentional misrepresentation, negligent misrepresentation, violations of the NCPA and UDTPA, unjust enrichment, constructive trust, declaratory judgment, and aiding and abetting must be dismissed as precluded under SLUSA.

In light of this determination, the court need not address the issue of regulatory preclusion or decide whether the various plaintiffs' allegations with respect to those state law claims are sufficient to state a claim. As discussed below in connection with the *Klein* action, the allegations may amount to securities fraud. In the interest of justice, the court will grant the plaintiffs in *Zola, Verideck, Lerner*, and *Sarbacker* leave to amend to assert a federal securities claim should they so desire. The plaintiffs in those cases have not been granted previous leave to amend. In *Klein,* one motion for leave to amend has been granted. The actions are still in early stages and a class

action has not yet been certified.  The court finds that to deny plaintiffs leave to amend or to enter a dismissal with prejudice would be too harsh a result.  If the plaintiffs are not permitted to bring federal securities claims, the putative class may be left with no remedy at all.[9]

### B. Federal Securities Fraud Claim

With respect to the *Klein* action, the court respectfully disagrees with the magistrate judge's finding that the allegations of federal securities fraud in the Amended Complaint are insufficient to state a claim under Fed. R. Civ. P. 12(b)(6).  Under the heightened pleading standards of the PSLRA, the court finds Klein states a claim for securities fraud for under section 10(b) and Rule 10b-5.  The Amended Complaint sets forth particularized factual allegations that TD Ameritrade adopted a practice of maximizing order routing payments that was inconsistent with best execution of its clients' orders, while consistently representing that it would abide by a duty of best execution.  He specifies the statements alleged to have been misleading and sets forth the reasons why those statements were misleading, in that he has presented plausible empirical allegations that TD Ameritrade's order-routing practices were not consistent with its duty to best execute the orders.

Further, he has alleged facts from which scienter can be inferred.  TD Ameritrade's motive, as reflected in its alleged generation of over one billion dollars in revenue, plays into this analysis.  The timing of TD Ameritrade's changes in its practices, its corresponding increases in revenue, and allegations that certain vendors have undergone investigations or inquiries from regulatory agencies in connection with

---

[9] As noted *supra* at 18, *individual* plaintiffs may pursue their claims in state court.

the order routing practices makes a cogent and compelling showing of scienter. TD Ameritrade has not presented a credible countervailing nonculpable explanation.

Further, the plaintiff has plausibly stated that members of the putative class suffered economic loss traceable to the misrepresentations. He has alleged that he and the putative class members were damaged as a result of TD Ameritrade's self-interested order routing in that orders went unfilled, were underfilled, were filled at a suboptimal price, and high frequency traders were allowed to jump the queue and take advantage of a price benefit that should have gone to the plaintiffs. These allegations, though couched in securities-industry jargon actually amount to an allegation that TD Ameritrade's order routing practices affected the price at which they purchased and sold securities to their detriment. They allege TD Ameritrade's conduct resulted in a loss to the customers, a benefit to HFTs, and a gain to TD Ameritrade. The court finds these allegations of loss and loss causation are sufficient at this stage of the proceeding. Although the extent of the damages suffered by the class may be difficult to quantify, the information necessary to make that determination is in the possession of the defendants. Loss causation must be plausibly alleged, but does not have to be proved at this stage of the proceedings.

Also, the allegations of the complaint reflect the fact that the order routing policy was not an incidental policy or a spontaneous or rogue act by a TD Ameritrade employee; it was the deliberate policy of TD Ameritrade itself. Klein's Amended Complaint states facts from which it is reasonable to infer that the practice of maximizing order routing payments has led to inferior execution speeds, fill-rates, realized spreads, and execution quality. He plausibly alleges that order routing

payments were the most significant factor in determining where TD Ameritrade routed orders and presents plausible empirical allegations showing that it is unlikely that a single venue could "virtually always" provide its customers with the best execution while coincidentally obtaining for itself the highest order-flow payment.

Also, defendant Tomczyk's position as CEO gives rise to a strong inference that he was aware of matters central to the operation of his business, including order routing that allegedly netted TD Ameritrade $1 billion over a four-year span. The Amended Complaint plausibly alleges that Tomczyk actually exercised control over the general operations of TD Ameritrade and possessed the power to determine the specific acts or omissions upon which the primary violation is predicated. Accordingly, the court finds defendant TD Ameritrade's motion to dismiss Klein's federal securities fraud claim should be denied.

IT IS ORDERED:

1.      The objections filed by plaintiffs *Zola*, *Verdieck*, *Lerner*, and *Sarbacker* (Filing No. 53 in *Zola*, No. 8:14CV288, Filing No. 53 in *Verdieck*, No. 8:14CV289, Filing No. 55 in *Lerner*, No. 8:14CV325, and Filing No. 66 in *Sarbacker*, 8:14CV341) are overruled.

2.      Plaintiff Klein's objections (Filing No. 96 in *Klein*, No. 8:14CV396), are overruled in part and sustained in part as set forth in this order.

3.      The Findings and Recommendation of the United States Magistrate Judge (Filing No. 52 in *Zola*, No. 8:14CV288, Filing No. 52 in *Verdieck*, No. 8:14CV289, Filing No. 54 in *Lerner*, No. 8:14CV325, Filing No. 64 in *Sarbacker*, 8:14CV341, and Filing No.

95 in *Klein,* No. 8:14CV396) are adopted with respect to the SLUSA preclusion issue, and rejected in all other respects.

4.    The defendants' motions to dismiss (Filing No. 44 in *Zola,* No. 8:14CV288, Filing No. 44 in *Verdieck*, 8:14CV289, Filing No. 47 in *Lerner*, No. 8:14CV325, and Filing No. 54 in *Sarbacker*, No. 8:14CV341) are granted.

5.    The plaintiffs' state law class action claims are dismissed in *Zola*, No. 8:14CV288; *Verdieck*, 8:14CV289; *Lerner*, No. 8:14CV325; and *Sarbacker*, No. 8:14CV341.

6.     The plaintiffs are granted leave to file amended complaints within 21 days of the date of this order.

7.    Defendant TD Ameritrade's motion to dismiss (Filing No. 79 in *Klein*, 8:14CV396) is granted with respect to the plaintiff's state-law claims and denied with respect to the federal securities fraud claim.

Dated this 23rd day of March, 2016.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge